UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

BRIANNA JEFFERSON,

   on behalf of herself and all others similarly situated,

   Plaintiff,

                              DEMAND FOR JURY

-vs-                                 Case No. 14-13749
                                      Hon. Paul D. Borman

UNITED CAR COMPANY, INC.,

   Defendants.

## AMENDED CLASS ACTION COMPLAINT TO ENFORCE CIVIL LIABILITY PURSUANT TO THE FEDERAL TRUTH-IN-LENDING ACT, SEEKING STATUTORY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY FEES; JURY TRIAL

    Named Plaintiff, BRIANNA JEFFERSON, on behalf of herself and all others similarly situated, sue Defendants, UNITED CAR COMPANY, INC., and alleges as follows:

## JURISDICTION

1.    This class action claim is made pursuant to the Federal Truth-in-Lending Act, 15 U.S.C. 1601, *et seq.* (hereinafter referred to as the "Act.").

2.    The jurisdiction of this Court is invoked pursuant to 15 U.S.C. §1640(e) and 28 U.S.C. §1337.

3.    This claim is brought as a class claim by Named Plaintiff on behalf of herself and all similarly situated persons pursuant to the Federal Rules of Civil Procedure, Rule 23.

## PARTIES

4. Named Plaintiff, Brianna Jefferson [hereinafter "Named Plaintiff"] and the class of persons she seeks to represent are "consumers", as defined in the TILA at 15 U.S.C. §1602(h), who entered into consumer credit transactions for the financing of certain motor vehicles which they purchased from Defendant in the form of retail installment sales contracts or obligations [hereinafter referred to as RISC's].

5. Defendant, UNITED CAR COMPANY, INC. [hereinafter referred to as "UCCI" or "Defendant" is a "creditor", as defined in the Act at 15 U.S.C. §1602(f), who, in the ordinary course of its business directly financed the sale and purchase of certain motor vehicles pursuant to retail installment sales contracts.

## VENUE

6. Named Plaintiff, Brianna Jefferson is a resident of the City of Dearborn in Wayne County, Michigan.

7. Defendant, UNITED CAR COMPANY, INC. has its place of business in the City of Detroit, Wayne County, Michigan.

8. The transactions and occurrences which underlie this action occurred in the City of Detroit, Wayne County, Michigan.

9. Venue is proper in the United States District Court for the Eastern District of Michigan.

## COUNT I -TRUTH IN LENDING ACT

## PREAMBLE & GENERAL ALLEGATIONS

10. This is an action for statutory penalties and damages and for declaratory and injunctive relief, brought pursuant to the Truth in Lending Act, 15 U.S.C. §1601, *et seq*. [hereinafter the "Act"] and 12 C.F.R. 226.1, et seq. [hereinafter Reg. Z]. It is brought on behalf of a class of consumers where Count I alleges that defendant, as creditor-seller, intentionally failed to comply with the Federal Truth In Lending Act by providing Named Plaintiff and the putative class with retail installment contracts (RISCs) containing financial disclosures that were meaningless because the disclosures were subject to unilateral change by defendant after the buyers signed the RISCs agreeing to the offered terms. The size of the class is limited only by the applicable statute of limitations, i.e., and is estimated to greatly exceed 1,000 members.

11. Named Plaintiff alleges that the class period began on January 10, 2005 and continues forward to include all persons who have been victimized by the unlawful practices described herein.

12. TILA provides, in pertinent part, that its purpose is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to her and avoid the uninformed use of credit.

13. The Defendant is the one and only creditor in Named Plaintiff's and in the putative class's retail installment transactions, i.e, credit sales.

14. The Named Plaintiff's and the putative class's retail installment contracts were consummated at the time the buyers signed a RISC presented to them by Defendant and Defendant delivered to them the purchased motor vehicles.

15. Named Plaintiffs and the putative class are consumers.

16. At all times relevant hereto Defendant was a Michigan corporation licensed to do business in Michigan, was a motor vehicle dealer as defined under Michigan law, was engaged in trade or commerce with motor vehicles, and was licensed as a motor vehicle finance company pursuant to Michigan law.

17. Named Plaintiff further alleges that when presented to her by Defendant, the RISC terms were entirely illusory because, when Named Plaintiff and the class of persons she seeks to represent, signed a RISC agreeing with the terms, Defendant considered each and every provision in the RISC to be non-final and subject to change at Defendant's whim, to wit: Defendant denies that it is the installment creditor, claiming that the "creditor" is some as-yet unknown third party to whom Defendant may choose to assign the RISC. Defendant contends that some time after the Named Plaintiff and the class members signed a RISC and took delivery of the purchased motor vehicles, if Defendant chooses to sell its obligation to a third party (as opposed to cancelling and changing the terms) it is at the time of assignment that "consummation" takes place. As a consequence of this procedure Defendant itself is never bound to TILA's mandates and is never obligated under any RISC. If Defendant chooses not to sell the RISC to a third party it will either unilaterally cancel the RISC and retake possession of the sold vehicle, or will change the terms of the RISC and require the buyer to sign a second, un-bargained for RISC or lose the purchased vehicle.

18. Defendant facilitates its financing procedure through the use of a waiver form of its own creation euphemistically entitled a " "Purchase Spot Delivery Agreement" i.e., a unilateral waiver/rescission form. Named Plaintiff allege that Defendant's rescission form is an illegal waiver of Defendant's obligations and of Named Plaintiff's and the class's rights under the RISC and under TILA, which Act mandates that retail installment contracts when signed by the buyer are the final written financing expression between the parties and is binding on both the Defendant-creditor and the buyers. As used by Defendant the rescission form purports to relieve the Defendant from its contractual obligations and to waive the buyers' (Named Plaintiff's and the class's) right to rely upon the RISC as the final written expression of the parties' agreement.

19. During the class period as hereinafter defined is consistent with the TILA limitations period, Defendant has invariably violated TILA and Regulation Z in each of its credit sales by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other term in the Named Plaintiff's and the putative class's RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at Defendant's sole and arbitrary discretion; Named Plaintiff's case being typical of the class.

20. Defendant's acts and omissions are violations of TILA as TILA's purpose is to assure a meaningful disclosures of credit terms so that consumers will be able to compare more readily the various credit terms available to him or her and avoid the uninformed use of credit.

21. In practice, the Defendant conditions the Named Plaintiff's RISC and the putative class members' RISCs on Defendant's willingness to sell its contractual obligation to a third party under terms which Defendant determines are profitable, thus defining consummation as that point in time when a third party buys Defendant's RISC at Defendant's rate, sometimes days or weeks after the buyer signs the RISC and accepts delivery of the purchased motor vehicle. TILA mandates that consummation occurs at the time that buyers sign the RISC.

22. In the Named Plaintiff's case, she purchased the vehicle, made a down payment and took delivery on September 10, 2014. Over the next several days, the Defendant continuously harassed her to return the vehicle, insulted her, accused her of committing a felony. During this time, the Defendant refused to return the Named Plaintiff's down-payment and told her she owed more more money, even though the Defendant was demanding the return of the vehicle. The effect of this situation was to deny the Named Plaintiff a clear understanding of the terms of credit sale with Defendant and to prevent the Named Plaintiff from obtaining credit elsewhere on more favorable terms.

23. The harm that is or may be visited upon all retail buyers and members of the class by the Defendant is what happened to the Named Plaintiff. That is, Defendant's scheme is to deliver a used car to each retail buyer the same day the buyer sets foot on Defendant's lot in order to take consumers out of the car-buying market. During the transaction Defendant's words and deeds are designed to convince buyers that they are purchasing and financing a motor vehicle at a specific price and under specific financial terms which, when Defendant obtains the consumers' signatures on the retail installment contract, represents to them that the financial terms are accepted, are final, and cannot be changed unilaterally. However, by

    Defendant obtaining consumers' signatures on its "Purchase Spot Delivery Agreement," the Defendant is surreptitiously and illegally reserving to itself the unilateral and arbitrary ability to change the terms of the contract or to revoke the contract and reacquire the motor vehicle. Later, if a buyer does not acquiesce to different and un-bargained for terms, or if Defendant chooses to revoke the contract, Defendant may threaten repossession or retake possession of the motor vehicle and leave the buyer without transportation while retaining the buyer's down payment and/or trade-in.

24. On or about September 10, 2014, Named Plaintiff visited Defendant's dealership in Detroit, Michigan and purchased a used, 2007 Chevrolet Impala VIN 2G1WT58K579319990. At that time Defendant represented that Named Plaintiff's credit was approved and financing was complete at the terms reflected in a retail installment sales contract.

25. Named Plaintiff agreed to the terms and signed the RISC, at which time Defendant delivered the vehicle to the Named Plaintiff.

26. Among the many purchase, finance, insurance, and state-required documents that Defendant prepared and presented to the Named Plaintiff was a unilateral rescission document titled, "Purchase Spot Delivery Agreement." This waiver form purports to allow Defendant to unilaterally cancel the contract "in the event the dealership is unable to assign the Retail Installment Sales Contract to a third party," or if Defendant unilaterally cancels the RISC or changes the terms to its pecuniary advantage. Under all circumstances Defendant considers the sold vehicle to be owned by Defendant until such time, if at all, it actually sells the RISC to some third party. Defendant required the Named Plaintiff and the class members to insure the vehicle at their own expense.

27. On or about September 16, 2014, Defendant did, in fact, unilaterally cancel Named Plaintiff's RISC as written and demanded return of the Chevy Impala and an additional $600.00 as a "repossession fee" on top of the $1,500.00 down payment she had already made; during this conversation, the Defendant was verbally abusive and accused the Named Plaintiff of fraud.

28. On or about September 17, 2014, Defendant again demanded return of the Chevy Impala and an additional $600.00 as a "repossession fee" on top of the $1,500.00 down payment she had already made; during this conversation, the Defendant was verbally abusive and accused the Named Plaintiff of fraud.

29. On or about September 18, 2014, Defendant again demanded return of the Chevy Impala and an additional $600.00 as a "repossession fee" on top of the $1,500.00 down payment she had already made; during this conversation, the Defendant was verbally abusive and accused the Named Plaintiff of fraud.

30. On or about, September 18, 2014, the Defendant having unilaterally rescinded the transaction and notified the Named Plaintiff as such, Named Plaintiff used her monetary resources to repair another vehicle so that she could have reliable transportation.

31. On or about September 19, 2014, the Defendant contacted the Named Plaintiff and told her that it had "obtained financing" for her.

32. Named Plaintiff has suffered actual damages and statutory damages.

## CLASS ACTION ALLEGATIONS

33. Named Plaintiff brings this action on behalf of herself and all other individuals similarly situated as defined below. This action is maintainable as a class action pursuant to Rules 23(a) and 23(b)(1), (b)(2) and (b)(3) federal rules of civil procedure for monetary statutory damages, injunctive and declaratory relief.

34. The class is defined as:

    All persons who have signed a retail installment contract with Defendant and whose signatures were also obtained by Defendant on a form purporting to give Defendant the unilateral right to cancel the contract, said class size restricted between September 29, 2013 and the present date and as long as the unlawful conduct enumerated herein continues.

35. The members of the class are so numerous that joinder of all the members is impracticable. While the exact number of class members can be determined only by appropriate discovery from Defendant, based upon knowledge and information Named Plaintiff believes that the class includes well over one thousand members as Defendant violates TILA in every consumer motor vehicle retail installment transaction.

36. Named Plaintiff's claims are typical of the claims of the members of the class.

37. The calculation of Named Plaintiff's damages is identical to those class members whose RISC's were unilaterally rescinded, regardless of whether Defendant rescinded the

38. Named Plaintiff can fairly and adequately protect and represent the interests of the members of the class and has retained counsel competent and experienced in class action litigation.

39. A class action is superior to other available method for the fair and efficient adjudication of this controversy. Since the damages suffered by individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation

    makes it practically impossible for members of the class to effectively seek individual redress for the wrongful conduct of the Defendant alleged in this complaint.

40. Common questions of law and fact exist as to all members of the class and predominate over any question solely affecting individual members of the class. The questions of law and fact common to the class include the following:

    a. Whether the conduct of Defendant alleged in this complaint is unlawful;

    b. Whether the Defendant's alleged conduct constitutes violations of 15 U.S.C. §1601(a), et seq., §1638, and Regulation Z, 12 C.F.R. §226.1 *et seq*.

    c. Whether Defendant's unilateral rescission form purports to waive or to circumvent Defendant's obligations under TILA and the buyer-signed RISC, renders the TILA disclosures illusory and thus violates TILA.

    d. The measure of penalties and damages available to Named Plaintiff and to members of the class for the Defendant's wrongful conduct; and

    e. Whether Defendant's alleged acts and practices should be declared violations of TILA and be permanently enjoined.

41. The prosecution of separate claims by individual members of the class would create a risk of a) inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant; or b) individual adjudications would as a practical matter be dispositive of the interests of other members of the class who are not parties, or would substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests; and c) the Defendant has acted or refused to act on grounds generally applicable to all members of the class, thereby making declaratory and

injunctive relief concerning the class as a whole appropriate.

## COUNT II – Rescisson (Individual claim)

42. Named Plaintiff incorporates the preceding allegations as if set forth herein.

43. Defendant repudiated the RISC and therefore was not entitled to negotiate that contract or sell it.

44. Named Plaintiff relied on the Defendant's repudiation and took other steps to secure alternate transportation.

45. Named Plaintiff seeks and is entitled to rescission of the RISC.

46. Named Plaintiff is entitled to an order decalaring her RISC null and void.

## DEMAND FOR JURY TRIAL

47. Plaintiff requests a trial by jury.

## REQUEST FOR RELIEF

Named Plaintiff requests the following relief:

a. a ruling from this Court finding this matter appropriate for class treatment;

b. a judgment for actual damages for each class member;

c. a judgment for the lesser of $1,000,000 or 1% of defendant's net assets;

d. reimbursement for reasonable attorney fees for all time expended in connection with the prosecution of this claim;

e. a declaration that the practices and policies of the defendant are unlawful;

f. a determination that Named Plaintiff and the class of consumers that she seeks to represent have no adequate remedy at law and that they are entitled to injunctive relief;

g. in Named Plaintiff's individual claim, a declaration that the RISC Named Plaintiff signed is rescinded; and

h. any and all other relief this Court may deem fair, just and appropriate.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Named Plaintiff and Class
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
Phone:  (248) 746-3790
Email:   adamgtaub@clgplc.net

The Alexander Law Firm

By: **/s/ Adam S. Alexander**
Adam S. Alexander (P53584)
Attorney for Named Plaintiff and Class
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
Phone:  (248) 246-6353
Email:   adam@alexanderfirm.com

Dated: November 10, 2014