UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIANNA JEFFERSON,

       Plaintiff,

                                           Case No. 14-13749

v.

                                           Paul D. Borman
                                           United States District Judge

UNITED CAR COMPANY, INC.,

       Defendant.
_____/

OPINION AND ORDER GRANTING PLAINTIFF'S THIRD MOTION FOR ENTRY OF
DEFAULT JUDGMENT (ECF NO. 26)

       This action arises from Plaintiff's allegations that Defendant United Car Company, Inc. violated the federal Truth-in-Lending-Act, 15 U.S.C. § 1601, *et seq*. ("TILA"). Plaintiff's Amended Complaint was filed on behalf herself and on behalf of a putative class. (ECF No. 6.) Defendant has failed to defend or otherwise appear in this action and Plaintiff now moves this Court for entry of a Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 26.) As the class has never been certified, Plaintiff has moved for entry of a default judgment only as to her own claims. Plaintiff has twice previously moved for entry of default judgment, but the Court denied the previous motions without prejudice due to defects in service and failure to seek a clerk's entry of default.

       A hearing on this matter was held on July 14, 2016 and Defendant did not attend the hearing. For the following reasons, the Court will grant Plaintiff's Motion for Entry of a Default Judgment. (ECF No. 26.)

I. FACTUAL BACKGROUND

The Court previously set forth the factual background of this case in its June 11, 2015 Opinion and Order denying Plaintiff's first motion for entry of a default judgment and incorporates that section here:

> Plaintiff alleges in her amended complaint that she purchased a used 2007 Chevrolet Impala from Defendant on September 10, 2014 and paid Defendant $1,500 for a down payment. (Am. Compl. ¶¶ 24, 27). Plaintiff claims that Defendant represented that Plaintiff's credit was approved for financing and also provided her with a retail installment sales contract ("RISC") that purportedly reflected all the terms and conditions of that financing. (*Id*. at ¶¶ 24-25). In addition to the RISC, Plaintiff signed a "Purchase Spot Delivery Agreement" which provided that Defendant could "unilaterally cancel the contract 'in the event the dealership is unable to assign the Retail Installment Sales Contract to a third party,' or if Defendant unilaterally cancels the RISC or changes the terms to its pecuniary advantage." (*Id*. at ¶ 26). Plaintiff signed the RISC and Defendant delivered the vehicle to Plaintiff. (*Id*. at ¶ 25).
>
> On September 16, 2014, Defendant unilaterally canceled Plaintiff's RISC and demanded that she return the vehicle and a pay $600.00 "repossession fee" and forfeit her down payment. Plaintiff alleges that Defendant was "verbally abusive" and accused her of fraud. (*Id*. at ¶ 27). Defendant called again on September 17 and 18 and repeated the same. (*Id*. at ¶¶ 28, 29). Plaintiff then used her "monetary resources to repair another vehicle so that she could have reliable transportation." (*Id*. at ¶ 30). Then, on September 19, 2014, Defendant contacted Plaintiff and advised her that it had "obtained financing" for her. (Am. Compl. at ¶ 31).
>
> ....
>
> Plaintiff avers that Defendant did not consider the vehicle sold until Defendant sold the RISC to a third-party. (*Id*.). However, Plaintiff was responsible for insuring the car at her own expense after taking possession. (*Id*.). Plaintiff alleges that Defendant's use of the "Purchase Spot Delivery Agreement" rendered the terms of the RISC illusory and illegally waived Defendant's obligations under TILA because TILA "mandates that retail installment

contracts when signed by the buyer are the final written financing expression between the parties and is binding on both the Defendant-creditor and the buyers." (*Id*. at ¶¶ 17-18).

(ECF No. 15, at *2-3.)

## II. PROCEDURAL HISTORY

This action was originally filed on September 29, 2014. Plaintiff filed an amended complaint on November 10, 2014 in response to a order to show cause regarding whether the Eastern District of Michigan was the proper venue for her action. (ECF Nos. 5, 6.) On December 20, 2014, Plaintiff requested a Clerk's Entry of Default. (ECF No. 8.) The Clerk granted the request and a Clerk's Entry of Default was entered on December 24, 2014. (ECF No. 9.)

On February 26, 2015, this Court ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute. (ECF No. 10.) In response to the order to show cause, Plaintiff filed a Motion for Entry of a Default Judgment on March 3, 2015. (ECF No. 11.) On June 11, 2015, this Court denied Plaintiff's Motion for Default finding that Plaintiff had failed to effect proper service under the Federal Rules of Civil Procedure and that Plaintiff's request for Clerk's Entry of Default and the Motion for Default were erroneously premised upon the original complaint. (ECF No. 15.)

On September 3, 2015, the Court issued an order to show cause why this case should not be dismissed for failure to prosecute. (ECF No. 17.) In response to the order to show cause, Plaintiff filed a second Motion for Entry of a Default Judgment on September 15, 2015. (ECF No. 18.) On October 30, 2015, this Court denied Plaintiff's second motion for

default judgment because Plaintiff had failed to first move for a Clerk's Entry of Default as required by the Federal Rules of Civil Procedure. (ECF No. 22.)

On November 3, 2015, Plaintiff requested, and was granted, a clerk's entry of default. (ECF Nos. 23, 24.) On February 4, 2016, this Court issued another order to show cause why the case should not be dismissed for failure to prosecute. (ECF No. 25.) Plaintiff then filed her third Motion for Entry of a Default Judgment. (ECF No. 26.)

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 55(b) a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner v. City of Dearborn Heights*, No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995), *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted). Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. FED. R. CIV. P. 55(b). If the plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the asserted claims, then the Court should enter a judgment in favor of the plaintiff. *See Cross*, 441 F. Supp. 2d at 848. Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a

judgment by default, the case law sets forth that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice & Procedure, § 2685 (3d ed. 1998) (collecting cases). After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded. *See id*. § 2688 (collecting cases).

## IV. ANALYSIS

A.  Sufficient Service

"Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Russell v. Tribley*, No. 10-14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases). The Federal Rules of Civil Procedure provide that a corporation, partnership, or association must be served either by the procedure set forth in Rule 4(e)(1), that provides an individual may be served by "following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires– by also mailing a copy to the defendant." FED. R. CIV. P. 4(h)(1)(A)-(B). The Michigan Court Rules provide that service upon a domestic corporation may be made by "serving a summons and a copy of the complaint on an officer or the resident agent." Mich. Ct. Rule 2.105(D)(1).

Plaintiff submits that Defendant is a licensed automobile dealer and pursuant to Michigan statute,

> [a]s a condition precedent to the granting of a license, a dealer shall file with the secretary of state an irrevocable written stipulation, authenticated by the applicant, stipulating and agreeing that legal process affecting the dealer, served on the secretary of state or a deputy of the secretary of state, has the same effect as if personally served on the dealer. This appointment remains in force as long as the dealer has any outstanding liability within this state.

Mich. Comp. Laws § 257.248.  The record reveals that the summons and complaint were properly served upon the Secretary of State pursuant to Mich. Comp. Laws § 257.248 on June 23, 2015, and thereafter forwarded to Defendant.  (ECF No. 16, Proof of Service.) Thus, Plaintiff has established that Defendant was properly served pursuant to the Michigan Court Rules where service upon the Secretary of State has the same effect as personal service upon the defendant dealer itself.

B.     TILA Violation

As noted above, once a default has been entered by the clerk's office, the Court deems all of a plaintiff's well-pleaded allegations admitted, except those allegations relating to damages.  *Antoine*, 66 F.3d at 110.  Accordingly, the question now before this Court is whether Plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the TILA claim.  *See Cross*, 441 F. Supp. 2d at 848.

Plaintiff claims that Defendant violated 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. § 226.1, *et seq.*, because the terms of the RISC executed by Plaintiff and Defendant were entirely illusory based on a "Purchase Spot Delivery Agreement" that was contemporaneously executed by the parties.  (ECF No. 26, Ex. B, Retail Installment Contract

6

and Security Agreement.) Plaintiff alleges that she is a consumer and Defendant is a creditor as defined under TILA. Plaintiff further alleges that the "Purchase Spot Delivery Agreement" provided that Defendant could unilaterally cancel the RISC, repossess the sold vehicle, or change the terms of the RISC and require the buyer to sign a second and un-bargained for RISC. (Am. Compl., at ¶ 17.) Plaintiff states that Defendant's use of the "Purchase Spot Deliver Agreement" violated TILA and Regulation Z "by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other term" in Plaintiff's RISC because at the time of consummation the disclosures were subject to subsequent change or cancellation at Defendant's sole discretion. (Am. Compl., at ¶ 19.)

Plaintiff's TILA claims are supported by case law in this district holding that analogous "spot delivery" contracts can violate TILA. *See Patton v. Jeff Wyler Eastgate, Inc.*, 608 F. Supp. 2d 907, 914-16 (S.D. Ohio, 2007) (holding that an automobile dealer violated TILA by using a "spot delivery" contract that rendered the retail installment sales contract illusory and concluding that "[t]he purpose of TILA would be frustrated if automobile dealerships are permitted to rescind the terms of integrated automobile retail installment sales contracts by use of a second, contradictory form."); *see also Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826 (S.D. Ohio, 2010) (finding TILA violation in analogous circumstance and noting that the RISC and spot delivery agreement contradicted each other in material ways which prevented the contracts from being read as one contract.)

Although Plaintiff did not attach the Purchase Spot Delivery Agreement to the Motion for Entry of Default Judgment she has pleaded its existence and its contents in her amended complaint. The Court takes her well-pleaded complaints as true, and therefore, based on the Purchase Spot Delivery Agreement rendering the terms of the RISC illusory, Plaintiff has established a TILA violation. *Patton*, 608 F. Supp. 2d at 914-16.

1. Damages

Regarding damages, Plaintiff seeks actual damages pursuant to 15 U.S.C. § 1640(a)(1) in the amount of $1,571.00, the amount of her deposit that is evidenced by the attached receipt. (Ex. A.) Plaintiff also seeks statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(ii) in the capped amount of $2,000. The Court notes that § 1640(a)(2)(A)(ii) applies to an "individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000." *Id*. This action does not involve a consumer lease as defined by 15 U.S.C. § 1667(1) in Subpart E. Plaintiff alleges she purchased a vehicle, she did not allege that she leased a vehicle. Therefore, the statutory damages are governed by § 1640(a)(2)(A)(iv), which provides that "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000." *Id*. Plaintiff's requested statutory damages of $2,000 is within the statutory amount allowed under § 1640(a)(2)(A)(iv) and thus is a reasonable award.

Plaintiff also requests attorneys fees and costs pursuant to TILA pursuant to § 1640(a)(3) which "permits recovery of reasonable attorney's fees and costs." *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996). Plaintiff's attorney has attached affidavits attesting that he spent 6.4 hours on this case at a rate of $325 per hours, and another attorney spent 2.7 hours on this case at a rate of $300.00 per hour for a total of $3,637.50 for attorneys fees and $400.00 in filing fees. After review, the Court finds Plaintiff's request for attorney's fees and costs are reasonable and will award Plaintiff her requested attorney's fees and costs in the total amount of $4,037.50.

C.   Rescission

Plaintiff also seeks the rescission of her contract with Defendant. "Under Michigan law, 'rescission abrogates a contract completely.' All former contract rights are annulled; it is as if no contract had been made." *Diamond Computer Sys., Inc. v. SBC Communications, Inc.*, 424 F. Supp. 2d 970, 986 (E.D. Mich. 2006) (quoting *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 640 (Mich. Ct. App. 1995)). "In order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract." *Omnicom of Mich. v. Giannetti Inv. Co.*, 221 Mich. App. 341, 348 (Mich. Ct. App. 1997).

In the present case, Plaintiff alleges that Defendant repudiated the contract by demanding and repossessing the vehicle. The Court finds that Plaintiff has adequately pleaded Defendant's material breach of the contract and will therefore grant Plaintiff's request to rescind the RISC.

V. CONCLUSION

For all these reasons, the Court GRANTS Plaintiff's Third Motion for Entry of Default Judgment and AWARDS Plaintiff actual and statutory damages in the amount of $3,571.00 and attorney's fees and costs in the amount of $4,037.50, for a total of $7,608.50. The Court will also RESCIND the Retail Installment Contract and Security Interest Agreement attached as Exhibit A to this opinion and order.

      IT IS SO ORDERED.

                              s/Paul D. Borman  
                              PAUL D. BORMAN  
                              UNITED STATES DISTRICT JUDGE

Dated:  July 18, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 18, 2016.

                              s/Deborah Tofil  
                              Case Manager

MI-103-ARB 10/31/2010

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| United Car Company, Inc.<br>20615 W 7 Mile Rd<br>Detroit, MI 48219 | brianna jefferson<br>26319 mcdonald st<br>dearborn, MI 48125 | No.<br>Date | App# 32970411 - V# 5<br>9/10/2014 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1800.00 |
|---|---|---|---|---|
| 25.00 % | $ 5537.38 | $ 9575.00 | $ 15612.38 | $ 16912.38 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 1 | $ 250.00 | 09/24/14 One Payment of 250.00 10/17/14 |
| 46 | $ 328.53 | Monthly, Beginning 10/23/14 |
| | $ | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the greater of 5% of the unpaid amount of the payment due or $15.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☐ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2007 | Chevrolet | Impala | Sedan | 2G1WT58K579319990 | 94411 |

☐ New
☒ Used
☐ Demo

Other:

## Sales Agreement

**Payment.** You promise to pay us the principal amount of

$ 9575.00 plus finance charges accruing on the unpaid balance at the rate of 25.00 % per year from the date of this Contract until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of

$ N/A if you pay this Contract in full before we have earned that much in finance charges.



### Itemization of Amount Financed

a. Price of Vehicle, etc. (incl. sales tax of
$ 587.55                            )     $          10205.00
b. Service Contract, paid to:
Keep It Running                           $            499.00
c. Documentary Preparation Fee, paid to Seller    $     175.00
d. _____         $              N/A
e. _____         $              N/A
f. **Cash Price** (a+b+c+d+e)             $          10879.00
g. Trade-in allowance                     $              N/A

Trade-In Description _____
_____
_____
_____

h. Less: Amount owing, paid to (includes n):
_____          $               N/A
i. Net trade-in (g-h; if negative, enter $0 here and enter
the amount on line o)                   $               N/A
j. Cash payment                          $           1300.00
k. Manufacturer's rebate                 $               N/A
l. Other down payment (describe)
_____          $               N/A
m. **Down Payment** (i+j+k+l)            $           1800.00
n. Unpaid balance of Cash Price (f-m)    $           9079.00
o. Financed trade-in balance (see line i)    $           N/A
p. Paid to public officials, including filing fees    $    101.00
q. Insurance premiums paid to insurance company(ies)   $    N/A
r. Knight Management Insurance Serv     $             395.00
s. _____       $               N/A
t. _____       $               N/A
u. _____       $               N/A
v. _____       $               N/A
w. Total Other Charges/Amts Paid (o thru v)    $        496.00
x. Prepaid Finance Charge                $               N/A
y. Amount Financed (n+w-x)               $            9575.00

We may retain or receive a portion of any amounts paid to others.

### Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single  ☐ Joint  ☐ None
Premium $ N/A            Term N/A
Insured _____

**Credit Disability**
☐ Single  ☐ Joint  ☐ None
Premium $ N/A            Term N/A
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _Brianne_____  08/07/1994
                                      DOB

By: _____
                                      DOB

By: _____
                                      DOB

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company you choose that is authorized to sell insurance in Michigan. The collision coverage deductible may not exceed
$ N/A                          . If you get insurance from or through us you will pay
$ N/A              for _____ of coverage.

This premium is calculated as follows:
☐ $ N/A          Deductible, Collision Cov. $ N/A
☐ $ N/A          Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ _____ $ N/A

☐ **Single-Interest Insurance.** Insurance for your and our dual protection could not be obtained. As a result, you must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay
$ N/A            for _____ of coverage.

### Rejection of Arbitration

Checking the following box will not affect the terms under which we will finance and sell the Property or any of the terms of this Contract, except that the arbitration provision will not be a part of this Contract:

☐ You reject the arbitration provision of this Contract.

[This area intentionally left blank.]

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

[X] **Service Contract**
Term: 12 months or 12000 miles
Price: $ 499.00
Coverage:

[X] **Gap Waiver or Gap Coverage**
Term: 46 months
Price: $ 395.00
Coverage:

[ ]
Term:
Price: $
Coverage:

By: /s/ [signature]          Date: 9/10/2014

By: _____          Date: _____

By: _____          Date: _____

## Additional Terms of the Sales Agreement

**Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the *Description of Property* section. "Property" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Application of Payments.** We can apply your payments to any amounts you owe under this Contract, including the Finance Charge, Amount Financed, or any other amounts you owe, in whatever order we decide.

**Prepayment.** You may prepay the outstanding balance of this Contract in full or in part at any time. We will rebate to you the unearned portion of the finance charge, to the extent required by law. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Your Right to Refinance a Balloon Payment.** A balloon payment is a scheduled payment that is larger than any of the substantially equal prior scheduled payments. If your final scheduled payment is a balloon payment, you have the right to enter into a new written contract when it is due (refinance). You may refinance a balloon payment in equal installments over a reasonable period of time. During this period, you will also pay a finance charge on the unpaid balance computed using the Annual Percentage Rate stated in the *Truth-In-Lending Disclosure*.

**Governing Law and Interpretation.** This Contract is governed by the law of Michigan and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default if you fail to perform any obligation that you have undertaken in this Contract (except as prohibited by law).

If you default, you agree to pay our court costs, attorneys' fees and expenses of retaking, repairing and storing a repossessed Vehicle securing this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.



You can prepay all of your debt and get a refund of the unearned portion of the Finance Charge. If you default and we repossess the Vehicle, we may, at our option, allow you to get the Vehicle back before we sell it by paying all past due payments, late charges, and expenses.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in the following collateral security: proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. Before we obtain insurance we will give you any notices required by law and credit for any refund we receive of prepaid, unearned premiums for cancelled dual-protection insurance. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Creditor-Placed Insurance Notice.** You are giving us a security interest in the Property described in the *Security Agreement* section. You are required to maintain insurance on the Property to protect our interest until all debts secured by this Contract are paid. If you fail to provide evidence of insurance on the Property to us, we may place insurance on the Property and you will be responsible to pay for the costs of that creditor-placed insurance after we give you notice and wait any time period required by law. The method of billing for creditor-placed insurance charges may create a balloon payment or extend the maturity date of the debts secured by this Contract, if you and we agree to do so when the charge is added to what you owe us under this Contract.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**Arbitration Provision. PLEASE READ CAREFULLY!** By agreeing to this arbitration provision you are giving up your right to go to court for claims and disputes arising from this Contract:

- EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.
- YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.
- IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to:

1. the credit application;
2. the purchase of the Property;
3. the condition of the Property;
4. this Contract;
5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or
6. any related transaction, occurrence or relationship.

This includes any Claim based on common or constitutional law, contract, tort, statute, regulation, or other ground. To the extent allowed by law, the validity, scope, and interpretation of this arbitration provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Rather, the Claim will be arbitrated on an individual basis, and not on a class or representative basis.

The party electing arbitration may choose any of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org); JAMS, 1920 Main Street, Suite 300, Irvine CA 92614 (www.jamsadr.com); or National Arbitration and Mediation (NAM), 990 Stewart Ave., Garden City, NY 11530 (www.namadr.com). You may get a copy of the applicable rules of these organizations by contacting them or visiting their websites. If the chosen arbitration organization's rules conflict with this arbitration provision, then the terms of this arbitration provision will govern the Claim. If none of these arbitration organizations is willing or able to handle the arbitration, the arbitrator can be selected pursuant to 9 U.S.C. Sections 5 and 6.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we otherwise agree. Or, if you and we consent, the arbitration hearing can be by telephone. In connection with any arbitration, if you so request, we shall advance your filing, administration, service or case management fee, and your arbitrator or hearing fee, up to a total of $2,500.00. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorneys, experts, witnesses, and any other fees or costs, including any amount we have advanced.



An arbitrator must be a lawyer with at least ten (10) years experience and familiar with consumer credit law or a retired state or federal court judge. Except as provided below, the arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Furthermore, Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1, et seq., except that (i) if a single arbitrator awards you less than $5,000 you shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators, and (ii) if the single arbitrator awards you more than $100,000 we shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators. The party requesting such rearbitration will be required to pay the filing, administration, service or case management fee and the arbitrators and hearing fee, subject to final determination by the arbitration panel. Any court having jurisdiction can enforce a final arbitration award.

You or we can do the following without giving up the right to require arbitration:
- Seek remedies in small claims court for Claims within the small claims court's jurisdiction, or
- Seek judicial provisional remedies.

If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This arbitration provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this arbitration provision is deemed or found to be unenforceable for any reason, the remainder of this arbitration provision will remain in full force and effect. The one exception is that, if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis then this arbitration provision will be unenforceable in its entirety.

You and we expressly agree that this arbitration provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

By signing this Contract you are agreeing to the terms of this arbitration provision, unless you reject it as provided in the next paragraph.

Caution: It is important that you read this arbitration provision thoroughly before you sign this Contract. By signing this Contract, you are acknowledging that you have read and understand this arbitration provision. If you do not understand something in this arbitration provision, do not sign this Contract; instead ask your lawyer. You can reject this arbitration provision by checking the box in the *Rejection of Arbitration* section of this Contract before you sign this Contract. If you do so, this arbitration provision will not be a part of this Contract, but all the rest of this Contract will continue to be binding and effective.

### Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

### Third Party Agreement

In this section only, "*you*" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

N/A
_____
By:                                          Date

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

Arbitration. This Contract contains an Arbitration Provision that <u>affects your rights</u>.

[This area intentionally left blank.]



### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: *brianna jefferson*      9/10/2014
Date

By: _____ Date

By: _____ Date

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Warning:** The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others unless so indicated hereon.

**Notice to Buyer.** Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.

Buyer

By: *brianna jefferson*      9/10/2014
Date

By: _____ Date

By: _____ Date

Seller

By: *United Car Company, Inc.*      9/10/2014
Date

Buyer acknowledges delivery of a copy of this Retail Installment Contract and Security Agreement.

By: *brianna jefferson*      9/10/2014
Date

By: _____ Date

By: _____ Date

**Assignment.** This Contract and Security Agreement is assigned to Westlake Financial Services, the Assignee, located at 4751 Wilshire Blvd. Suite 100 Los Angeles, CA 90010, phone (800) 641-6700.

This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.

Seller

By: *United Car Company, Inc.*      9/10/2014
Date

*[This area intentionally left blank.]*